(Decided 15th November, 1889.)

---

CORNELIUS L. KEEDY *vs.* HATTIE A. LONG.

*Pleading—Confession and Avoidance—Contract of Hiring— Discharge of Employé.*

In an action to recover damages for a breach of contract of employment, pleas that admit the making of the contract, and its subsequent breach, but one of which sets up a justification, and the other two a judgment in bar, are pleas in confession and avoidance, and are good pleas, if the justification set up be valid, and the judgment relied on be in law a bar to the proceeding.

Where a person employed for a year at a specified salary, payable monthly, is discharged before the expiration of two months, and having been paid one month's salary prior to her discharge, sues and recovers judgment for the value of her services up to the time of such discharge, and the judgment is paid, she can not afterward sue her employer for a breach of the contract.

APPEAL from the Circuit Court for Alleghany County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, and McSHERRY, J.

25 v. 71.

*Henry H. Keedy,* for the appellant.

*A. Hunter Boyd,* and *Hy. Kyd Douglas,* for the appellee.

McSHERRY, J., delivered the opinion of the Court.

In September, 1887, the appellant, the principal and proprietor of the Hagerstown Female Seminary, employed the appellee to teach music in his school. The contract is evidenced by the following correspondence between the parties; viz., first, a letter from Mr. Keedy to Miss Long, in which he says: "I desire to engage a teacher of vocal and instrumental music; salary is from 3 to 400 dollars, and home, according to the efficiency and ability of the teacher." Second, Miss Long's reply, wherein she stated "that she was a competent teacher of music, both instrumental and vocal," and that she "was willing to be employed in the defendant's seminary." Then, a letter from Mr. Keedy: "After due reflection, I have concluded to offer you the position of teacher of instrumental and vocal music.  *    *    *    *
If you accept, expect you to teach six hours each day, for five days.  *    *    *   I will give you 350 dollars and home, boarding, washing, room, &c., &c.  *   *   *   I will pay you weekly or monthly, as you may desire. It will be a permanent position for you; and if you give good satisfaction I will raise your salary to 400 dollars for a scholastic year." Next, Miss Long's response: "I shall be pleased to accept of your offer, with the prospect of an advanced salary. I prefer my salary by monthly payments." And finally this letter from Mr. Keedy : "You can have your salary monthly, as you desire. Our school begins the 8th of September. You will please come on that day." The appellee entered upon the performance of her duties under this contract on or about the sixth day of September, and on the 28th of the following month she was discharged by the appellant. A

Keedy *vs.* Long.

few days thereafter she brought suit against him, before a justice of the peace, to recover the value of her services for twenty days—her salary for one month, up to October 8th having been paid prior to her discharge. She recovered a judgment in that action, which the appellant paid. Some months later she sued the appellant in the Circuit Court for Washington County for a breach of the contract above set forth. The case was removed to Alleghany County, and upon trial there resulted in a judgment against the appellant, who thereupon entered this appeal.

To the declaration, which contained a single count, the appellant filed seven pleas. The fifth was subsequently withdrawn. The first averred that the defendant "is not indebted as alleged ;" the second, that he "never promised as alleged;" the third, that the appellee was incompetent, and not qualified to teach, and that she had been discharged by the appellant for that reason; the fourth set forth, as another ground for her discharge, that she had injured the school by making the pupils dissatisfied ; and the sixth and seventh relied on the judgment recovered before the magistrate as a bar to the present action. The third, sixth, and seventh pleas were demurred to; issues were joined on the first and second, and on the replications to the fourth. The Circuit Court sustained the demurrer. During the trial two exceptions were reserved, one to the admissibility of evidence and the other to the rulings on the prayers.

Since the decision of the case of *Horner and Condon, Ex'rs vs. Frazier*, 65 *Md.*, 1, it must be regarded as settled in this State that the plea "never promised as alleged," prescribed by the Code, is, in an action of *assumpsit*, the general issue plea. It has, therefore, in such actions the same scope and effect which the formal general issue plea possessed before the adoption, in 1834, by the English Judges, of the rules regulating pleading.

If the third, sixth and seventh pleas amount to the general issue, the ruling of the Circuit Court on the demurrer was correct, because it is an elementary principle that pleas which merely amount to the general issue, though not such in form, are bad; and this Court has held the defect to be one of substance which a general demurrer will reach. *Miller vs. Miller*, 41 *Md.*, 623. But, as observed by Lord Chief Justice DENMAN in *Hayselden vs. Staff*, 5 *Ad. & Ellis*, 153, "there is a great distinction between the case of a plea which amounts to the general issue and a plea which discloses matter which may be given in evidence under the general issue." The general issue is a denial of the whole substance of the declaration, and puts upon the plaintiff the necessity of establishing all the essential allegations in the *narr.* But a plea which gives express or implied color to the plaintiff's statement—admits that statement to be true—but makes defence by setting up new matter in avoidance, can never be said to amount to the general issue, for the obvious reason that the element of denial is absent. Hence, "where the defendant elects to plead specially defences in confession and avoidance which would be admissible in evidence under the general issue, the fact that they are admissible under the general issue does not make his special plea bad." *Poe's Pl.*, 540; 1 *Ch. Pl.*, 529; *Steph. Pl.*, 363. These three pleas give color to the plaintiff's statement of her case, they admit, in effect, the making of the contract and its subsequent breach by the defendant, but the third sets up a justification for the breach, and the two others set up a judgment in bar. In a word, they confess and avoid. They are, therefore, good pleas if the justification set up be valid and if the judgment relied on be, in law, a bar to this proceeding.

There can be no difficulty in respect of the third plea. The appellee, in her first letter to the appellant, stated

that "she was a competent teacher of music, both instrumental and vocal." If then, in fact, she proved to be incompetent to do the thing she was employed to do, and the thing she represented herself qualified to perform, the master had the undoubted right to dismiss her. *Wood on Master and Servant*, 166; *Harmer vs. Cornelius*, 94 *E. C. L. R.*, 236.

The questions presented by the demurrer to the sixth and seventh pleas are of more interest and importance, for they involve, generally, an inquiry as to the remedies which a servant has against the master who wrongfully discharges him; and, especially, the effect which the suit brought by the appellee before the magistrate has upon her right to prosecute this action. The contract between these parties was clearly for a definite period—a scholastic year—and not one merely at will. The terms used in the letters quoted are sufficient to establish this, apart from any reference to the nature of the employment, and the character of the services agreed to be performed. Before the expiration of that period the appellee was discharged, and, let us assume in considering the subject, wrongfully discharged. What, then, were her remedies?

It was formerly determined in England, and followed in some cases in this country, that in such a case the servant holding himself in readiness to perform his contract, and being able and willing to do so, was entitled to recover his wages for the whole term, upon the ground of constructive service. This doctrine had its origin in a decision by Lord ELLENBOROUGH at *nisi prius* in *Gandell vs. Pontigny*, 4 *Camp.*, 375; *S. C.*, 1 *Starkie*, 198. It was followed in other cases, then doubted, again adopted, but finally repudiated altogether in *Elderton vs. Emmens*, 6 *C. B.*, 160; *Goodman vs. Pocock*, 15 *Q. B.*, 576.

"A servant, wrongfully discharged," says *Smith* in his work on *Master and Servant*, 75 *Law Lib.*, 96, "has only

two remedies open to him at law, either of which he may pursue *immediately* on his discharge. First, he may treat the contract as *continuing*, and bring a special action against the master for breaking it by discharging him; and this remedy he may pursue whether his wages are paid up to the time of his discharge or not; or, secondly, if his wages are not paid up to the time of his discharge, he may treat the contract of hiring as *rescinded*, and sue his master on a *quantum meruit* for the services he has actually rendered." These two alternative remedies are the only ones open to him. *Mayne on Damages*, 159. Upon a *quantum meruit* he can only recover for the services actually rendered. *Archard vs. Hornor*, 3 *Carr. & P.*, 349; *Smith vs. Hayward*, 7 *Adol. & El.*, 544. In an action for damages for a breach of the contract, he will be entitled to recover the *actual* damages he has sustained, in addition to the wages earned; and, in case he has, by diligence, been unable to secure other employment, during the entire term, he can recover the entire wages, less the amount he has actually earned during the *interim*, or the amount he might have earned by the exercise of proper diligence in seeking for employment in the same or similar business. *Wood on Master and Servant*, 249; *Mayne on Damages*, 158; *Elderton vs. Emmens, supra; Goodman vs. Pocock, supra*. The servant will not be allowed to bring more than one of these alternative actions. *Wood on Master and Servant, sec.* 125. If he elects to sue upon a *quantum meruit*, he must treat the contract as rescinded, *Bull vs. Schuberth*, 2 *Md.*, 57, and he will not be allowed to maintain afterwards an action for damages, which action is founded on the assumption of the continuance of the very same rescinded contract. And so, conversely, when he treats the contract as a continuing one, by suing for a breach of it, occasioned by his having been wrongfully discharged, he can not be permitted to recover also upon

a *quantum meruit*, where a recovery presupposes the total rescission of the agreement. Hence, when he pursues one of the two only remedies open to him he of necessity abandons the other; and a recovery in one would be a complete bar to any subsequent action on the other. This is so in actions of this character, because the two remedies are alternative. Herein lies the distinction between this class of cases and the decisions relied on and cited by the appellee. These latter, of which *Davis vs. Brown*, 94 *U. S.*, 423, is an example, announce a correct doctrine, which, however, has no application, for the reason just indicated, to cases like the one now before us.

The servant has a choice between two distinct remedies; when he elects to pursue one of them, he is, by that selection, excluded from resorting to the other. Accordingly in *Goodman vs. Pocock, supra*, which was an action of assumpsit for work and labor, where it appeared at the trial that the defendant engaged the plaintiff as a commercial traveller, from January 23d, 1847, at a salary of £200 a year, payable quarterly, and dismissed him from that employment on April 8th, 1848; that the plaintiff then brought an action for the wrongful dismissal, and the jury gave damages for a portion of unpaid salary up to January 23d, 1848, and for disbursements and expenses, and also £50 for the wrongful dismissal, and stated that they had not taken into the account any services rendered between the 23d of January and the date of plaintiff's dismissal; it was held that a ratable portion of salary for the broken quarter, commencing January 23d, 1848, could not be recovered, even though Lord DENMAN, C. J., in the first action had erroneously refused to permit the jury to allow for the services actually rendered during the broken quarter. COLERIDGE, J., said, "In a case like this the servant may either treat the contract as rescinded, and bring

*indebitatus assumpsit*, or he may sue on the contract, but he cannot do both." ERLE, J., observed: "I am of the same opinion. The plaintiff had the option either to treat the contract as rescinded, and to sue for his actual services, or to sue on the contract for the wrongful dismissal. He chose the latter course, and he cannot now turn round and try the former course."

It has been strenuously insisted that there is still another remedy open to the servant, and in support of that contention the case of *Howard vs. Daly*, 61 *N. Y.*, 369, has been earnestly pressed upon us. After alluding to the two alternative actions spoken of, the Court says; "These remedies are independent of and additional to his right to sue for *wages* for a sum actually earned and due by the terms of the contract. The last amount he recovers because he has completed, either in full or in a specified part, the stipulations between the parties. The first two remedies pointed out are appropriate to a wrongful discharge." We are unable to assent to this. After there has been an *entire dismissal* of the servant by the master, a distinct and independent action to recover wages earned and actually due before a breach of the contract, would. in fact effect a division or splitting up of a single-cause of action. Such a doctrine would sanction two suits for the recovery of that which could be, and, on grounds of public policy at least, ought to be, embraced in only one ; and it would result in needless and vexatious litigation. But, apart from these considerations, the facts in the case of *Howard vs. Daly* did not require the expression of the opinion relied on by the appellee. The plaintiff in that case had been engaged to perform in a theatre for a certain season, at a salary payable weekly. Before the season opened, and therefore before she had rendered any services at all, the defendant broke the contract, and refused to allow the plaintiff to fulfil it on her part. Shortly after the season opened

she sued.    There was no question before the Court as to her right to recover in one action *wages* for services actually rendered, and in another to recover damages for the wrongful discharge.    There was, consequently, nothing in the case calling for the statement of the doctrine announced.    The sole question was as to the right of the plaintiff to recover in that case, under the facts there existing and just briefly recited.

No doubt, so long as the relation of master and servant actually continues, the servant may sue the master for each instalment of wages or salary as it falls due if the master fails to pay it.    In *Clossman vs. Lacoste, et al.*, 28 *Eng. L. & Eq. R.*, 140, cited with approval by this Court in *Dugan vs. Anderson*, 36 *Md.*, 567, it appeared that the plaintiff had been employed by the defendants to sell wines for them on commission, the agreement to continue five years, and the defendants guaranteeing the plaintiff £600 per annum as a minimum compensation. Suit was brought on this agreement, and the breach alleged was that the defendants had not guaranteed or paid to the plaintiff £600 per annum during the fourth and fifth years of the said term.    Plea, the pendency of a former action in the Exchequer in respect of the same claim.    The plea set out the declaration in the former action, whereby it appeared that the breaches there alleged were the non-payment of the commissions for the first and second years, and a further breach that the defendants had not guaranteed or paid the plaintiff £600 as a minimum revenue for the third year.    The plaintiff new assigned.    Lord CAMPBELL, C. J., said: "If a servant is employed at yearly wages, the service continuing after the first year, and the wages for the first year being unpaid, the servant may bring his action during the second year's service for the wages so due.    And so *toties quoties*.    But if the contract is entirely broken, and the relation of employer and employed put an end to, I

agree that the party suing ought to allege in his declaration the whole *gravamen* that he suffers by such breach of contract; and that he may recover therein all the damages that may ensue to him in consequence."

We are not to be understood as questioning the well settled law that where the contract is divisible a judgment recovered for the breach of one separate and independent provision does not bar a subsequent suit for a distinct breach of a different condition. *Dugan vs. Anderson, supra.* But the case at bar does not fall within this principle. The consideration for the appellee's agreement to teach was not only the promise to pay the salary named, but *also* the promise to pay it in monthly instalments. The promise to pay in such instalments was not a distinct and independent term of the contract.

What we mean to decide and do decide is this: Where the master wrongfully discharges the servant, the servant has two alternative remedies for this breach of the contract, *and* for the recovery of compensation for the services actually rendered, whether rendered up to a date or time fixed in the contract for the payment of a stated instalment of the salary, or whether rendered for a longer or a shorter period; and that the pursuit of one of these remedies will prevent the other from being invoked.

Inasmuch, therefore, as these pleas allege that the appellee, after having been discharged brought suit before a justice of the peace on a *quantum meruit,* and recovered a judgment therein, which judgment had been paid, she must be treated as having elected to pursue one of the two remedies then open to her, and she is, in consequence, precluded or barred from resorting to the other. She chose that remedy which implied that the contract had been rescinded and she carried it to a final judgment; she cannot subsequently institute and pursue the other remedy which is founded on the assumption that the contract is not rescinded but continuing.

We are fully sensible of the possible hardship which may result to the appellee from the conclusions we have reached; but, in the language of Lord CAMPBELL in *Goodman vs. Pocock, supra,* we are "extremely sorry if the plaintiff has sustained any hardship in consequence of the course which this litigation has taken; but we must decide this case according to the principles of law; and, according to those principles," we "have not the slightest doubt that this action must fail as to the claim now in question."

These views being decisive of the case, the other questions presented need not be considered, and the judgment must be reversed, without awarding a new trial.

*Judgment reversed.*

