CHARLES B. OLMSTEAD *vs.* HENRY BACH, JR., and JOSEPH A. MYERS, trading as HENRY BACH & SON.

*Master and Servant—Contract of Employment—Entire contract—Breach.*

A contract of employment for a year for a certain sum per week, payable weekly, is entire and indivisible, and only one action for the breach thereof can be maintained by the discharged employé.

Where under such contract the employé is wrongfully dismissed, and all wages actually earned up to that time are paid, the only action he would have, would be an action for the recovery of damages for the breach of the contract, and he could not maintain an action for salary as such on the ground that he was ready and willing to perform his work.

Where the employé sued for the breach of the contract and obtained judgment for only one week's salary, and the judgment was satisfied, no further recovery can be had.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, BRYAN, FOWLER, PAGE, ROBERTS, and MCSHERRY, J., and was reargued on briefs before ROBINSON, C. J., BRYAN, FOWLER, PAGE, ROBERTS, MCSHERRY, BOYD, and BRISCOE, J.

*William L. Hodge,* and *Charles Marshall,* for the appellant.

The question before the Court is whether, under such a contract as that set out in the declaration, the recovery of the judgment for one week's salary, followed by the

satisfaction of the judgment, is a bar to this suit for salary for subsequent weeks, no part of the salary now sued for having been due at the time of the institution of the suit before the justice in which the judgment was recovered?

It is supposed that the decisions of this Court in the cases of *Keedy vs. Long*, 71 *Md.*, 385, and *Keedy vs. Crane*, 71 *Md.*, 395, are decisive of this case, but we believe that the rule announced in those cases, properly understood, does not apply to the questions raised here. It will be observed that the Court, in the cases referred to, was called upon to decide whether, when a party has resorted to one of the two alternative remedies to which he is entitled upon the breach of the contract sued upon, he can afterwards avail himself of the other.

In the case of *Keedy vs. Long*, the action was for a breach of the contract, and the plea alleged that she had previously sued the defendant on a *quantum meruit*, and had recovered the amount of her salary for twenty days, the salary being payable *monthly* by the contract. Such a suit could only have been maintained on the theory of the total *rescission* of the contract. No recovery for twenty days could be had *under the contract*, but if the plaintiff had been wrongfully discharged, she could treat the contract as rescinded, and sue for the actual value of her services—*quantum meruit*. But after recovering in such an action, she could not maintain another founded on the theory of the *continuance* of the contract. See page 394.

The facts conceded by the pleadings in this case are that the suit brought by the appellant was not a suit which assumed that the contract was at an end. It was not a suit on a *quantum meruit*, but it was a suit to recover under the contract as a subsisting obligation.

The recovery in that suit might preclude the plaintiff from bringing another suit for *damages for wrongfully*

*discharging him*, but surely will not preclude him from maintaining the present suit, which is exactly the same kind of remedy that was resorted to in the suit before the justice. There is no change in the attitude of the plaintiff. Had he sued before the justice for one week's wages on a *quantum meruit*, and recovered, he could not afterwards have sued on the contract. But he may have as many suits *on his contract* as the provisions of the contract entitle him to.

It is assumed that the contract sued upon has been *rescinded.* In the *Long Case* it had been rescinded, because both parties had so treated it. The defendant in that case discharged the plaintiff, and the plaintiff recognized the contract as at an end, and proceeded to bring a suit which she could not have brought under the contract. She sued for twenty days' work, while *under the contract* she was to be paid *monthly.* Accepting the contract as being rescinded, she recovered money on that theory which she could not have recovered on the theory that the contract was still in force. By the act of both parties to the contract in that case, the contract was *actually rescinded.* But here there has been no *rescission* of the contract. The plaintiff has never done anything by which he recognized the contract as being at an end. It has been *broken*, undoubtedly, but there is all the difference in the world between a *broken* and a *rescinded* contract. One party to a contract may *break* it, but unless the right to put an end to it is reserved in the contract itself, or given in some other way, he cannot *rescind* it without the consent of the other party. In fact, it is not until the contract is broken that its legal obligation is called into action. When a man refuses to pay his note, he certainly does not rescind the contract of which the note is evidence. He breaks the contract, and makes himself liable, by force of the contract itself, for the breach.

Olmstead *vs.* Bach and Myers.

If the defendants can *rescind* a contract by simply re-fusing to perform it, the plaintiff ought to be allowed to keep it alive by performance or offering to perform.

In the case of *Keedy vs. Crane,* although the recovery was for a month's wages, and not for a portion of the month, yet it appears that the recovery was had in an action on a *quantum meruit.*　See page 396.

Now, in the *Long Case* it appears that the action in which the recovery pleaded was had, was on a *quantum meruit,* and not on the contract.　It was a *quantum meruit* also in the *Crane Case,* and the contract could only have been referred to as evidence of the value of the services, and not as showing the obligation to pay for them.

The recovery therefore before the magistrate in this case, being a recovery had under the contract itself, does not preclude another suit under the same contract for other amounts falling due under its provisions.

Did the facts in the case give the right of action asserted by the plaintiff?　His right to recover is based upon the terms of his contract, and his offer to perform his part of it.　The contract in this case is divisible. There is no gross sum promised to be paid, but weekly payments of $50 as long as the contract continues.

This suit is not for damages for dismissing the plain-tiff, but for refusing to pay his salary for five weeks, being all that was due when the suit was brought.

The language used in *Keedy vs. Long,* 71 *Md.,* 389, is somewhat stronger than the English authorities there referred to warrant.　In speaking of "constructive service," the Court says (page 389):　"It was formerly determined in England, and followed in some cases in this country, that in such a case (of wrongful discharge) the servant holding himself in readiness to perform his contract, and being able and willing to do so, was en-titled to recover his wages for the whole term, upon the

ground of constructive service. This doctrine had its origin in a decision of Lord ELLENBOROUGH at *Nisi Prius* in *Gandell vs. Pontigny*, 4 *Camp.*, 375. It was followed in other cases, then doubted, again adopted, but finally repudiated altogether in *Elderton vs. Emmens*, 6 *C. B.*, 160; *Goodman vs. Pocock*, 15 *Q. B.*, 576."

Now what is known as "the doctrine of constructive service," as stated by Lord ELLENBOROUGH, 4 *Campbell*, 375, is that if the servant was always ready, able and willing to perform his part, he could after the time fixed for payment by the contract, recover his whole compensation in an action of *indebitatus assumpsit*, on the ground that his readiness and willingness to perform was constructively performance by him. It is very important to note that this doctrine had relation to the *form of action*, and the meaning of the decision is lost unless this be borne in mind.

It is well settled that after a contract has been executed, the consideration may be recovered in an action of *indebitatus assumpsit*, without declaring on the contract itself. When there is no special count, but the ordinary count for work and labor, money due for work actually performed under a special contract may be recovered.

Now in *Gandell vs. Pontigny*, 4 *Camp.*, 375, the declaration only contained the *common count for work and labor*, and Lord ELLENBOROUGH said: "If the plaintiff was discharged without a sufficient cause, I think this action maintainable. Having served a part of the quarter, and being willing to serve the residue, in contemplation of law he may be considered to have served the whole. The defendant was therefore indebted to him for work and labor in the sum sought to be recovered."

Such a declaration as that in *Gandell vs. Pontigny*, could only be sustained by proof of work and labor done. An *executed contract* would sustain such a count for work and labor, and the readiness to perform, on the part of the

plaintiff, would be taken in law as performance so as to make the contract an executed one in such an action. This is the doctrine of constructive service. And it will be seen that it is as to this part of the decision of Lord ELLENBOROUGH, that he has been overruled.

In *Fewings vs. Tisdal*, 1 *Exch.*, 295, the declaration was *indebitatus assumpsit* for work and labor. The work had not in fact been done, and the Court refused to sustain the action by the servant *in that form*, repudiating the doctrine of constructive service as held by Lord ELLENBOROUGH in *Gandell vs. Pontigny*.

This feature of the decision in *Fewings vs. Tisdal* and like cases, is pointed out by the Judges in *Emmens vs. Elderton*, particularly in the opinion of CROMPTON, J., 4, *H. L. C.*, 644, 646-7, and in Mr. *Smith's* notes on *Cutter vs. Powell*, 2 *Smith's Leading Cases* (*9th Ed.*), 1245. After stating that *Gandell vs. Pontigny* has been overruled, referring to *Fewings vs. Tisdal*, 1 *Exch.*, 295, and to *Emmens vs. Elderton*, 4 *H. L. C.*, 624, the author proceeds: "It is now, however, clear that this remedy is not open to him, for he cannot allege that the defendant is indebted for work done, *but it does not follow from Fewings vs. Tisdal, that a special action of debt averring a contract to pay, a continuing readiness on the part of the servant to serve,* and a dispensation of service on the part of the master, might not be maintained." And in support of this statement, he refers to the opinion of Mr. Justice CROMPTON in *Emmens vs. Elderton*, one of the cases cited by this Court in *Keedy vs. Long*.

In *Goodman vs. Pocock*, 15 *Q. B.*, 576, also cited by this Court, the plaintiff had brought an action, with a special count, for wrongful dismissal, and also an *indebitatus* count for work and labor. The trial Judge directed the jury not to allow for the salary during the quarter broken by the dismissal, assigning as a reason that it could only be recovered in the *indebitatus* count, and in-

asmuch as the particulars of demand did not include it, no recovery for it would be had in that action. The plaintiff then brought another suit in *indebitatus assumpsit* for the wages for the broken quarter, but it was held that he could not recover, because in his first action for wrongful dismissal, he had treated the contract as subsisting, and had recovered damages for the breach, in which suit he might have recovered wages for the broken quarter as damages, and that he could not bring *indebitatus assumpsit* for these wages, as that suit assumed that the contract was at an end. But that case by no means decides that the servant could not *sue on the contract.* On the contrary it expressly decides that the "servant may treat the contract as rescinded and bring *indebitatus assumpsit,* or *he may sue on the contract,* but he cannot do both."

In the case at bar the suit before the justice was a suit on the contract, and the present suit is also a suit on the contract. Both suits assume the contract to be a subsisting contract, and there are two suits instead of one, because the form of the contract gives rise to more suits than one.

The language of Lord CAMPBELL in *Clossman vs. Lacoste,* (28 *E. L. & Eq. R.*, 140), cited by this Court in *Keedy vs. Long,* is not in conflict with our position. He says: "But if the contract is entirely broken and the relation of employer and employed put an end to, I agree that the party suing has the right to allege in his declaration the whole *gravamen* that he suffers by such breach of contract."

The breach of contract sued for before the magistrate was the non-payment of a week's salary, not for the wrongful dismissal of the plaintiff. The plaintiff elected to regard the contract as still in force, and refused to acquiesce in its attempted rescission by the defendants. He could not assign as a breach the non-payment of salary

Olmstead *vs.* Bach and Myers.

not yet due by the terms of the contract, but was obliged to wait until it became due. He alleged the whole damage to which he was entitled under the contract at the time he brought suit.

In support of the proposition that the contract is divisible, the following authorities were referred to : 1 *Story on Contracts,* (5*th Ed.*), sec. 25; *Cf. Davis vs. Maxwell,* 12 *Met.,* 286; *Nichols vs. Coolahan,* 10 *Met.,* 449; *More vs. Bonnet,* 40 *Cal.,* 251; *Rodemer vs. Hazlehurst,* 9 *Gill,* 289, 294-5; *Perkins vs. Hart,* 11 *Wheaton,* 251; 2 *Smith's L. C.* (8*th Ed.,*) 42, and cases there cited. (*Cutter vs. Powell,* notes.) See also *Secor vs. Sturgis,* 16 *N. Y.,* 548; *Badger vs. Titcomb,* 15 *Pick.,* 414; *Story on Contracts,* (5*th Ed.*) sec. 38; *Dugan vs. Anderson,* 36 *Md.,* 567; *Sickels vs. Pattison,* 14 *Wend.,* 257.

If it be granted that this contract, or its performance, was severable, then each default will support an action of *assumpsit,* and it was, therefore, not only proper, but also possible, to sue at the end of each week for which wages had not been paid. Each of these stipulations is considered as a several contract. *Badger vs. Titcomb,* 15 *Pick.,* 414; Chief Justice MARSHALL in *Faw vs. Marsteller,* 2 *Cranch,* 10.

The first judgment, therefore, is not a bar to another action for salary subsequently coming due. *Isaacs vs. Davies,* 68 *Ga.,* 169. This is a case directly in point and does not seem to have been questioned in any of the authorities or decided cases. See also the case of *Huntington vs. Ogdensburg, &c. R. R. Co.,* 7 *Am. Law Reg.,* (*N. S.*), 143 (*Su. Ct. N. Y.,*); the same case not so fully nor so well reported in 33 *How. Pr.,* 416. See further *Bendernagle vs. Cocks,* 19 *Wendell,* 207, 208: *Thompson vs. Wood,* 1 *Hilton,* 93; *Fowler vs. Armour,* 24 *Ala.,* 194, 199; *Lord vs. Belknap,* 1 *Cush.,* 279; *Armfield vs. Nash,* 31 *Miss.,* 361; *Blun vs. Holitzer,* 53 *Ga.,* 82; *Sterner vs. Gower,* 3 *Watts & Serg.,* 136; *Perry vs. Harrington,* 2

*Metc.*, 368; *Greenleaf vs. Kellogg*, 2 *Mass.*, 568; *Sickels vs. Pattison, supra; Rodemer vs. Hazelhurst*, 9 *Gill*, 294-5.

*Frank Gosnell* (with whom was *Thomas M. Lanahan*, on the brief,) for the appellees.

The contract under consideration is an *"entire contract,"* and in the dismissal of the appellant by the appellees there was but one breach, and, therefore, there can be but one cause of action, and the recovery before the magistrate, and the satisfaction of that judgment, is a bar to the present action. *Dugan vs. Anderson*, 36 *Md.*, 585; *McCullough Iron Co., vs. Carpenter*, 67 *Md.*, 554; *Keedy vs. Long*, 71 *Md.*, 385; *Keedy vs. Crane*, 71 *Md.*, 395; *Clossman vs. Lacoste*, 28 *Eng. L. & Eq.*, 140; *James vs. Allen County*, 44 *Ohio State*, 226; *Booge vs. Pacific Railroad*, 33 *Mo.*, 212.

In the cases of *Keedy vs. Long* and *Keedy vs. Crane*, 71 *Md.*, 385 and 395, the doctrine of "constructive service" for the first time was urged upon this Court, and counsel for Miss Long and Miss Crane, relied upon the cases of *Armfield vs. Nash*, 31 *Miss.*, 361, *Colburn vs. Woodworth*, 31 *Barbour*, 381, *Thompson vs. Wood*, 1 *Hilton*, 97, and *Fowler vs. Armour*, 24 *Ala.*, 199, in support thereof, but this Court, considering the doctrine utterly indefensible and untenable, said, on page 389, Judge McSHERRY delivering the opinion, that "it was formerly determined in England, and followed *in some cases in this country*, that in such a case *the servant holding himself in readiness to perform his contract*, and being able and willing to do so, was entitled to recover his wages for the whole term, upon the ground of constructive service. This doctrine had its origin in a decision by Lord ELLENBOROUGH at *nisi prius*, in *Gandell vs. Pontigny*, 4 *Camp.*, 375; *S. C.*, 1 *Starkie*, 198. It was followed in other cases, then doubted, again adopted, *but finally repudiated altogether* in *Elderton vs. Emmens*, 6 *C. B.*, 160; *Goodman vs. Pocock*, 15 *Q. B.*, 576."

Olmstead *vs.* Bach and Myers.

This Court has positively refused to be bound by the doctrine, and has repudiated the cases in New York, Mississippi and Alabama, and it is to be noted that the cases in New York have been expressly overruled by the Court of Appeals of that State in *Howord vs. Daly*, 61 *N. Y.*, 373, and the remaining cases in Mississippi and Alabama were repudiated and disapproved by that Court in that case, and by the Supreme Court of Ohio in *James vs. Allen Co.*, 44 *Ohio St.*, 226, and by the Court of Appeals of Illinois in *Jones vs. Dunton*, 7 *Ill. App.*, 580.

McSHERRY, J., delivered the opinion of the Court.

The declaration in this case alleges that the plaintiff and defendants entered into a written contract under seal, whereby the latter agreed to pay to the former a salary of fifty dollars per week, payable weekly, as compensation for the services of the plaintiff as cutter in the business of the defendants, and that the plaintiff agreed, in consideration of said salary, to devote his time and attention to the business of the defendants, as is usual in conducting a merchant tailoring business. The agreement further provided that the contract should continue in full force for one year from February the first, 1892, to February the first, 1893. The declaration also avers that the plaintiff entered into the service of the defendants under the above contract, and performed his duty thereunder until April the fifth, 1892, when the defendants refused to permit him to perform his part of said contract or to pay him the salary to which he was entitled thereunder after April the ninth, 1892. It further alleges that the plaintiff has always been ready and willing to perform his part of the contract, and to render the services which he agreed thereby to perform, and has always held himself in readiness, and offered to perform said services according to said contract, but that the defendants have refused to permit him to per-

form the contract on his part, and have refused, and still do refuse to pay him the salary of fifty dollars a week, as therein provided, since April the ninth, 1892. It concludes with a claim by the plaintiff "that there is due and unpaid to him of the amount payable to him under said contract, the sum of two hundred and fifty dollars, being the amount of said weekly salary stipulated to be paid by said contract to the twenty-fifth of May, 1892."

Among the defences relied on the defendants pleaded that on April the fifth, 1892, they dismissed the plaintiff from their service, and at the same time paid him all wages or salary due to him under the contract down to April the ninth, the end of the week terminating four days after his dismissal; that nine days after said dismissal the plaintiff brought suit against the defendants before a justice of the peace upon the identical contract and cause of action sued on in the case at bar, and that thereafter the plaintiff recovered judgment in that suit for the sum of fifty dollars and costs, which judgment was fully paid and satisfied by the defendants before the pending action was brought. To this plea the plaintiff replied, that after the pretended dismissal of him by the defendants, he, notwithstanding the dismissal, presented and offered himself to the defendants as ready and willing to perform his part of the contract set forth in the declaration, and did in fact continuously so offer to perform the same, and that the suit mentioned in said plea was a suit for his salary for one week under said contract. This replication was demurred to. The Baltimore City Court sustained the demurrer and entered judgment thereon for the defendants. The plaintiff thereupon took this appeal from that judgment.

It is apparent from this outline of the pleadings that the wages or salary now sought to be recovered as well as those sued for before the magistrate, were not wages

Olmstead vs. Bach and Myers.

or salary which had been actually earned, but were wages or salary for work and labor that the plaintiff was ready and willing, but had not been allowed, to perform. That the contract declared on was broken by the defendants when they dismissed the plaintiff is conceded, or at least is not denied, by the pleadings. For that breach the plaintiff was clearly entitled to recover. But to what extent and how often? The answer to these inquiries involves at the very outset an examination of the scope of the agreement set forth in the declaration, as to whether it is an entire or divisible one; because if it be entire and indivisible, and there has been but a single breach, but one action can be brought therefor.

The contract is one of hiring. Under it the plaintiff was employed as a cutter at fifty dollars per week, payable weekly, and it was expressly provided that this employment, and this weekly payment of wages should continue for one year. The duration of the employment was as much an integral part of the agreement as the stipulation relating to the amount of the compensation, and the stated periods for its payment. It was not a hiring by the week payable weekly, because it was explicitly declared that it should continue for a year. It was not fifty-two separate, independent contracts, but one indivisible agreement covering the period of a year and making provision for the weekly payment of wages. The consideration for the plaintiff's undertaking was the defendants' agreement to pay him fifty dollars a week *and* to employ him as a cutter for one year. The latter was as much a part of the consideration promised him for entering the service of the defendants as the former; for it would be wholly unreasonable to assume, as any other construction must, that it was the intention of the parties that the hiring should be for a week determinable by notice, or else merely a hiring at will as it undoubtedly would have been had there

been no stipulation as to its duration. *McCullough Iron Co. vs. Carpenter*, 67 *Md.*, 554. The good sense and reasonableness of the particular case must always guide and govern Courts in determining whether a contract is divisible or entire. *Dugan vs. Anderson*, 36 *Md.*, 585; *Jones vs. Dunn*, 3 *W. & S.*, 109; *Robinson vs. Green*, 3 *Metc.*, 159. Whether a contract must be sued on as an entirety or is divisible and can become the foundation of separate suits for the infraction of independent stipulations depends on its terms; and in order to arrive at a correct construction due regard must be had to the in·tention of the contracting parties as revealed by the language which they have employed, and the subject-matter to which it has reference. *Broumel vs. Rayner*, 68 *Md.*, 47; *Brewster & Spratt vs. Frazier*, 32 *Md.*, 308; *Brantly's Law of Contract*, 216.

Obviously the appellant expected and contracted for continuous employment for a year, and not for a weekly or still more precarious hiring at will; and the appellees contemplated securing a permanent cutter in their tailoring business. Certainty in the duration of the employment as well as exemption from the annoyance incident to frequent changes in such an employé, were manifestly within the contemplation of both of the parties to the contract when it was entered into, and with these considerations before them it seems to us clear that the appellant never supposed himself only hired by the week or at will, and equally clear that the appellees never understood that their employé was at liberty to terminate the engagement upon a week's notice. The hiring was for a year, and the wages were payable in weekly instalments of fifty dollars each. The subsidiary provision as to the payment of the wages each week does not split up the contract into as many agreements as there were payments or periods named for payments to be made, *Norrington vs. Wright*, 115 *U. S.*, 188; nor is it inconsis-

tent with a yearly hiring, *Norton vs. Cowell*, 65 *Md.*, 362; *Fawcett vs. Cash*, 5 *B. & Ad.*, 908; for, as said by Lord KENYON in *The King vs. Inhabitants of Birdbrooke*, 4 *T. R.*, 245: "Whether the wages are to be paid by the week or the year can make no alteration in the duration of the service if the contract were for a year." The contract is, then, an entire, and not a divisible one. It does not consist of distinct and independent subjects which admit of being separately executed and closed. A dismissal during the year was consequently a breach of the contract as an entirety, and furnished the party not in default with a good cause of action. The contract being entire, and having created the relation of master and servant and the latter having been, as averred in the pleadings, dismissed before the expiration of the term for which he had been engaged, what redress was open to him? Obviously but one remedy for the recovery of the whole damage sustained by him. In *Keedy vs. Long*, 71 *Md.*, 389, this Court said: "A servant wrongfully discharged has only two remedies open to him at law, either of which he may pursue *immediately* on his discharge. First, he may treat the contract as *continuing*, and bring a special action against the master for breaking it by discharging him; and this remedy he may pursue whether his wages are paid up to the time of his discharge or not; or, secondly, if his wages are not paid up to the time of his discharge, he may treat the contract of hiring as *rescinded*, and sue his master on a *quantum meruit* for the services he has actually rendered. These two alternative remedies are the only ones open to him. *Mayne on Damages*, 159. Upon a *quantum meruit* he can only recover for the services actually rendered. *Archard vs. Hornor*, 3 *Carr. & P.*, 349; *Smith vs. Hayward*, 7 *Adol. & El.*, 544. In an action for damages for a breach of the contract he will be entitled to recover the *actual* damages he has sustained, in addition to the wages earned; and in case he has

by diligence been unable to secure other employment, during the entire term, he can recover the entire wages, less the amount he has actually earned during the *interim*, or the amount he might have earned by the exercise of proper diligence in seeking for employment in the same or similar business. *Wood on Mas. & Serv.*, 249; *Mayne on Damages*, 158; *Elderton vs. Emmens*, 6 *C. B.*, 160; *Goodman vs. Pocock*, 15 *Q. B.*, 576." *Jaffray vs. King*, 34 *Md.*, 217.

In the case at bar the pleadings show that all wages earned by the appellant had been paid to him in full up to the end of the week during which he was dismissed. When he brought suit before the justice of the peace he had earned no wages which had not been paid him, for he had rendered no services after his dismissal. He was therefore at that time in no position to sue upon a *quantum meruit* for the value of services actually performed; and he could only recover in that suit damages for a breach of the entire contract, unless the contract was divisible into fifty-two independent agreements each capable of being separately executed and closed. His wages having been paid in full up to the time of his dismissal he had no option as to the remedies which he might pursue. He was confined to an action for the recovery of damages which he had sustained by a breach of the contract, because successive actions instituted for the recovery of fractions of the same aggregate damages cannot be supported. His suit before the magistrate was, whatever it purported to be, a suit for the breach of the contract of hiring. It could have been for nothing else, except for services never rendered, the value of which was measured by the price agreed to be paid for them when actually performed. There was but one dismissal and but one breach, and the plaintiff could not split up his cause of action, recovering a part of his damages in one suit and the remainder

afterwards in other suits for that single breach. "It is an ancient and familiar rule of law that only one action can be maintained for the breach of an entire contract, and the judgment obtained by the plaintiff in one suit may be pleaded in bar of any second proceeding. *Sedgwick on Damages*, 224." *Dugan vs. Anderson*, 36 *Md.*, 584. It was the appellant's plain duty to include all that belonged to that cause of action— that one breach— in the first suit, so that one proceeding and one recovery should settle the rights of the parties. It would be at his own risk and peril if he negligently or ignorantly omitted a part of what might properly have been embraced in the cause of action in the first suit. Or as expressed by Lord CAMPBELL in *Clossman vs. Lacoste*, 28. *Eng. L. & Eq. R.*, 140, "if the contract is *entirely broken*, and the relation of employer and employed put an end to, I agree that the party suing ought to allege in his declaration the whole *gravamen* that he suffers by such breach of contract, and that he may recover therein all the damages that may ensue to him in consequence." Again, as clearly put by the Supreme Court of Ohio in *James vs. Allen County*, 44 *Ohio St.*, 226: "As a result of the authorities, as well as upon principle we are satisfied that in such a contract as the one in the case at bar, where the employé is wrongfully dismissed, but all wages actually earned up to that time are paid, the only action the employé has, whether he brings it at once, or waits until the entire period of time has expired, is an action for damages for the breach of the contract; and the measure of damages will be the loss or injury occasioned by that breach, and one recovery upon such claim whether the damages be denominated loss of wages or damages for breach, is a bar to a future recovery." *Wood's Mas. & Serv.*, 246.

It is to be observed that the case at bar is distinguishable from a class of cases alluded to in *Clossman vs.*

*Lacoste, supra,* where there having been *no dismissal* of the servant, the only breach of the contract consisted in the failure of the master to pay when due, the wages or instalments of wages actually earned. In those instances the contract not having been broken by the dismissal of the servant, and he not having been prevented from performing his work and the relation of master and servant still continuing, an action on the contract could be maintained to recover the salary or wages due for a past stated period. *Keedy vs. Long,* 71 *Md.,* 392. But a *dismissal* of the servant, or differently stating the same thing, a refusal to allow him to continue to work, whilst not a *rescission* of the contract, is a breach of it that will authorize a recovery of damages for the whole injury which the servant may have sustained. And such a suit may be instituted though the time for the completion of the service has not elapsed. *Keedy vs. Long, supra.* This conclusion does not involve an application or adoption of the principles laid down in *Hochster vs. De Latour,* 20 *Eng. L. & Eq. R.,* 157. The law of the case just cited relates to cases where there is a pre-contract for future services, or the performance of some act or duty at a future period, and where performance cannot be commenced, and was not by the contract contemplated, until that period arrives, and where the promiser prior to that time announces his intention not to abide by the contract. But that is not this case, where performance had been commenced, and the plaintiff was prevented by the defendants' from further executing the contract.

But it is insisted the pending suit is not for damages for dismissing the plaintiff, but that it is an action on the contract to recover the plaintiff's salary for the five weeks following the one for which a recovery had been had before the justice of the peace. And the right to recover this salary *as salary* and not as damages for a breach of the contract, is based upon the plaintiff's read-

iness and willingness to perform his work, and not upon his actual performance of it. In other words, he seeks to recover instalments of salary for work which he never performed, and to recover them merely because he was willing to perform it but was prevented from doing so. As thus presented, under a contract that is indivisible, and which covers a hiring for a whole year at a salary payable in weekly instalments, it is a claim to recover for constructive services. Had the action been *indebitatus assumpsit* it is conceded the doctrine of constructive service would be involved, but as the suit is on an express contract prescribing the amount of each instalment of the compensation, it is urged that the defendants are liable for the stipulated price of the services the plaintiff agreed to perform, but never did perform, and that they are liable because the plaintiff was not permitted to perform them, though ready and willing to do so. In both *indebitatus assumpsit* and in an action on an express contract to recover *wages* for services which have not been performed, a recovery is sought for the amount that the plaintiff would have been entitled to recover had the services in fact been rendered; and such recovery is sought, not because the services have been rendered, but because the plaintiff was ready and willing to render them and the defendant prevented him. In both instances, therefore, the readiness of the plaintiff to perform and the refusal of the defendant to allow a performance constitute, when unearned *wages* are sued for, the ground of the actions, though the forms and the allegations of the pleadings are widely different. That which is sought to be recovered in both cases is the same thing, viz., *wages as wages*—though in the one case it is under the allegation of work and labor done, which allegation is attempted to be supported by the proof of a readiness and willingness to perform; and in the other it is under an allegation of a refusal to allow that work

to be done which the plaintiff had agreed to do, and continues ready and willing to do. Salary as salary, definitivley fixed and agreed to, and not a sum of money as unliquidated damages for a broken contract of hiring, is what is sued for under the declaration in the case at bar. It is a suit to recover *wages* though no services have been rendered at all, and, if maintainable in that form, would preclude the defendants from showing by evidence that the plaintiff could have secured other similar employment during the time covered by the contract; because if *wages*, distinctively as wages, can be recovered under such conditions instead of damages for a wrongful discharge or dismissal, they must be recovered as specific, ascertained debts, the amount of which is fixed by the contract, and is in no way subject to abatement by circumstances which would reduce the damages in a suit founded on a refusal by the defendant to allow the plaintiff to perform his part of an indivisible contract of hiring. In other words, if under such a contract the plaintiff is entitled to recover wages as wages upon a mere offer to perform, he must be entitled to recover just precisely the wages named in the contract, even though he might have obtained other work of the same kind at the same price during the period for which he claims his wages under the contract. This would be recovering for constructive services. That doctrine has been altogether repudiated both in England and in this country. *Keedy vs. Long*, 71 *Md.*, 389. "The doctrine of constructive service has in England, where it had its origin, been repudiated, and the law there established that a servant wrongfully discharged has not an action for *wages*, unless something is due for past services actually rendered; and as to any other claim on the contract it is for the breach of it, and for his damages resulting therefrom, *being the ordinary action for damages*, and not the common law action of *indebitatus assumpsit.*" *James vs. Allen County*, *supra;*

*Howard vs. Daly,* 61 *N. Y.,* 362, where *Gandell vs. Pontigny* 4 *Camp.,* 375, *Thompson vs. Woods,* 1 *Hilton,* 96, and the cases in Alabama, Mississippi and Wisconsin are distinctly dis-affirmed, and the doctrine of constructive service declared to be "so opposed to principle, so clearly hostile to the great mass of authorities * * * * that" it could not be accepted.

We hold, then, that the contract declared on is entire and indivisible. That for the breach of it by the defendants in discharging the plaintiff before the expiration of the year, or in refusing to allow him to work, a right of action arose, not for unearned wages or salary as such, but for damages for a breach of the contract, the measure of which damages would be the stipulated salary for the stipulated period of one year, less the amount the plaintiff actually earned or might by due and reasonable diligence have earned after his dismissal. *Jaffray vs. King,* 34 *Md.,* 223. That as there was but one breach, but one action could be maintained therefor. That having recovered before the magistrate in a suit founded on that breach—for he could have lawfully recovered upon no other theory—he is barred, upon the satisfaction of that judgment, from again suing on the same contract, because he could have recovered in one action all the damages he sustained including that for which he now sues. And that if the pending action be treated as a suit to recover for instalments of salary under the contract, no services having been rendered by him, it must fail because the services were never rendered but were constructive. The plaintiff elected to sue before a justice of the peace for a portion of the amount he might have recoverd had he claimed more and sued in a different forum, and he must abide the result of that election. He is not at liberty to split up his cause of action into fragments and successively sue for each when there has been but one breach of an entire and indivisible contract.

As we agree with the Court below, its judgment will be affirmed.

*Judgment affirmed, with*
*costs in both Courts.*

(Decided 5th October, 1893.)