## WRAY *v.* TILDEN SAW CO.

1. CORPORATIONS—OFFICERS—POWERS—WAIVER—PRESUMPTIONS.

   It will not be assumed that a corporation's president had authority to contract to pay for unearned wages or to waive performance of the contract by an officer.

2. SAME—OFFICERS—SALARY—RIGHT TO RECOVER.

   In an action by an officer of a corporation to recover on a contract for wages earned, where the defendant did not so arrange or force matters that plaintiff was admitted to earn his salary, the result was the same as if defendant had denied plaintiff opportunity to perform the contract, and, even if the contract was for a fixed period, plaintiff could not recover wages as such by a showing that he stood ready to perform, since defendant had the right to terminate the contract at any time.

3. SAME.

   Where plaintiff did not perform any service he did not earn

any salary which could be recovered, and it is immaterial that defendant secured a decree restraining certain persons from in any manner interfering with the management of the business by plaintiff as manager.

Error to Wayne; Hosmer, J. Submitted June 11, 1917. (Docket No. 35.) Decided September 27, 1917.

Assumpsit by Norman F. Wray against the Tilden Saw Company for salary earned. Judgment for plaintiff on a directed verdict. Defendant brings error. Reversed.

*McNamara & Scallen,* for appellant.

*Welsh, De Foe & Kahn,* for appellee.

The evidence was undisputed, none being introduced by defendant, both sides asked the court to direct a verdict, and one was directed for the plaintiff. No requests to charge were proposed.

The appellant states the facts as follows:

"This is an action in assumpsit for salary earned. Defendant is a Michigan corporation. At a regular meeting of its board of directors held May 12, 1913, a resolution was adopted by the terms of which two of the directors, Charles D. Todd, the president of the corporation, and James T. Currie, its secretary, were empowered to employ the plaintiff or some other suitable person to act as general manager of the defendant at a salary not to exceed $50 per week, until such time as the board of directors deemed it advisable to remove him.

"Pursuant to this authority, Mr. Todd and Mr. Currie employed plaintiff at a salary of $50 per week. Nothing was said to plaintiff as to how long his employment was to continue. Plaintiff entered upon his said employment, and continued to act as general manager until the night of September 15, 1913. At that time Mr. Currie informed him that they did not want him any longer, and that he should get out—that he was fired. Plaintiff saw Mr. Todd the same evening,

and in company with him went to the plant on the following morning, and was again refused admittance. On the following day he sent a letter to the defendant by registered mail (Exhibit 7), in which he stated that he was then, and would be at any time, ready to assume any part of the agreement. Within a day or two after that Mr. Todd told the plaintiff that he was still manager and to hold himself in readiness and to, be ready to go down there at any time. It does not appear that any other officers or stockholders ever told plaintiff anything of the sort. Plaintiff never did any work after that for defendant and never went near the factory after the morning of September 16, 1913, when he was told to get out by Mr. Currie.

"Immediately after these events, on September 19, 1913, a bill of complaint was filed in the Wayne circuit court, by the defendant herein, Tilden Saw Company, and all of its stockholders except Mr. Currie and his son, Jay Currie, who were made defendants, alleging that plaintiff herein had been wrongfully excluded, that such exclusion was menacing the best interests of the corporation, and asking that the defendants be restrained by injunction from interfering with the management of the corporation by said Norman Wray. On the same date a petition for a temporary injunction was filed (Exhibit 3), in which temporary relief of the same nature was prayed, an order to show cause was issued thereon, and a hearing had before Judge Mandell on October 10th, at which it was ordered, adjudged, and decreed:

"'That the motion of complainants for a temporary injunction be granted, and that the defendants, their agents and attorneys, be, and the same are hereby, restrained and enjoined until the further order of this court from * * * discharging any of its (Tilden Saw Company's) agents, office force, or other employees who have supervisory capacity, without applying to court, with immediate notice to complainant's solicitor.'

"The suit was heard by Judge Codd, and on June 1, 1914, a decree was entered which provided, in substance, that Norman Wray was properly appointed general manager by the board of directors, and that he had never been discharged, and perpetually enjoining defendants:

" 'from interfering in any form or manner whatsoever with the management of the business affairs of the corporation by said Norman Wray while he remains such manager, except in so far as they may have the right as two of the four members of the board of directors, while they are such members, to participate in any action which a majority of the board of directors may take regarding such management.'

"Plaintiff did not report for duty or offer to resume his duties either after the issuing of the temporary injunction or after the decree, and never did a day's work for defendant after the time he was excluded by Mr. Currie.

"On January 6, 1915, plaintiff commenced this suit, and by a special count in his amended declaration sets up that he was regularly appointed general manager of defendant and performed his duties as such until September 20, 1913, on which date certain officers of defendant refused him access to its plant and prohibited and prevented him from performing his said duties as general manager and from participating in its affairs, but that his employment had not been legally terminated, and that he has at all times been ready and willing to act and to perform his duties as general manager, and that by reason thereof there is now due him his salary as such general manager, less what he has earned in the meantime."

It should be added that finally, in September, 1914, the Curries bought the stock of other stockholders, ending controversies, large and small, which existed among officers and stockholders.

Appellant states the questions involved and the manner in which they were raised as follows:

"(1) The direction of the court that the plaintiff holding himself in readiness and awaiting orders was in itself a service for which he was entitled to recover.

"(2) That it was error not to instruct the jury that the failure of plaintiff to offer his services when clothed with power to perform them by injunction of the court bars his recovery.

"(3) That it was error to refuse to permit defendant to give evidence of the incompetency of plaintiff.

"(4) That it was error not to instruct that Mr. Currie's action had been ratified, and that the ratification related back so as to discharge plaintiff in September, 1913."

Plaintiff and appellee says:

"Counsel's whole argument under the first subdivision of their brief is based on the erroneous assumption that plaintiff's right of action arises from a breach of a contract by one of the parties thereto.

"If the plaintiff had been prevented from performing by the act of the defendant, then counsel's position would be well taken, and this action would be for a breach of the contract. We could not sue for a breach of the contract under the facts in this case, however, because there was no breach by the defendant. Whatever Mr. Currie did was without authority, as determined by Judge Codd, and was not the act of the defendant. The defendant could not be held liable for a wrong which it did not commit. The contract was not terminated or breached by either of the parties thereto, both of whom, affirming the continuance of the relation of employer and employee, joined in an action to restrain a third party (Mr. Currie) from interfering with that contractual relation.

"The fact that plaintiff, during this period, rendered but little, if any, actual service to the company, was no fault of his and no fault of the defendant or the majority of its stockholders. Plaintiff therefore had no right of action for a breach of the contract by the defendant, because the defendant never breached the contract. He was told by the defendant that he was still its general manager, and the court so held in the suit referred to. He held himself in readiness to do, and did whatever was required of him. If he was the general manager of the defendant, as held by Judge Codd, and this finding is not disputed in this suit, then the relation of employer and employee continued, and plaintiff was entitled to the wages stipulated in the contract of employment."

OSTRANDER, J. (*after stating the facts*). The contract of the parties was terminable at the will of

either. Plaintiff was performing it when performance was interrupted. He was paid for all services rendered. He seeks in this action to recover his contract salary, as salary, for an indefinite period, during which he performed no service. His theory is that the interruption was without defendant's fault or his fault, and effected no change in the relation of the contracting parties. According to this theory the contract is still in force and the salary running on, since it does not appear that the directors of defendant have, by formal action, terminated it, nor that plaintiff is not now standing ready to perform services when called upon to do so.

Manifestly plaintiff's theory must include the idea that defendant is free from fault, since defendant had the right to terminate the contract at any time. The interruption was sufficient to prevent plaintiff from earning his salary, since, he says, it prevented him from rendering the contract consideration for his salary, which was his services.

There is a suggestion, rather than a claim, or contention, presented to the effect that the president of defendant made with plaintiff some *ad interim* arrangement, or bargain, to the effect that he was to be at the call of defendant. It will not be assumed that defendant's president had authority to contract to pay for unearned wages or to waive performance of the contract by plaintiff. Decisions to which our attention is directed are none of them decisive of the question which is presented. See *Howard* v. *Daly*, 61 N. Y. 362 (19 Am. Rep. 285) ; *Olmstead* v. *Bach & Son*, 22 L. R. A. 74 (78 Md. 132, 27 Atl. 501, 44 Am. St. Rep. 273) ; *Keedy* v. *Long*, 71 Md. 385 (18 Atl. 704, 5 L. R. A. 759) ; *Granger* v. *Brewing Co.*, 25 Misc. Rep. 701, 55 N. Y. Supp. 695; *Kennedy* v. *Lumber Co.*, 102 Wis. 284 (78 N. W. 567) ; *James* v. *Allen County*, 44 Ohio St. 226 (6 N. E. 246, 58 Am. Rep. 821).

I conceive that, so far as the controlling principle is concerned, the case is not different from one where plaintiff was prevented by the defendant from earning his wages. It is clear that the defendant did not so arrange or so force matters that plaintiff was admitted to earn his salary. The result was the same as if defendant had denied plaintiff opportunity to perform the contract. In such a case, even if the contract was for a fixed period, plaintiff could not recover wages, as such, by a showing that he stood ready to perform. To this effect is the modern law in England and in this country, as the cases cited show.

It is true that defendant, in an effort to compel recognition of plaintiff and enable him to earn his salary, secured a decree of the chancellor restraining certain persons from interfering in any form or manner with the management of the business affairs of the defendant by plaintiff while he remained such manager, reciting, too, that at "the date hereof" (the date of the decree, June 1, 1914) plaintiff "is" the general manager of defendant. It remains that, either because he never thereafter undertook to manage the affairs of defendant, or for some other reason, plaintiff did not perform any service, earned no salary.

The judgment is reversed, with costs to appellant.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.