**Arlene WATKINS, Administratrix of the Estate of James Watkins, Sr., Plaintiff,**

v.

**C. Earl BROWN, Inc. et al., Defendants.**

**No. JFM–00–2793.**

United States District Court, D. Maryland.

Nov. 7, 2001.

Lauren Clingan, David M. Hammer, Hammer, Ferretti & Schiavoni, Martinsburg, WV, for Plaintiff.

Brett R. Wilson, Miller, Oliver, Baker, Moylan & Stone, Hagerstown, MD, for Defendants.

### MEMORANDUM

GESNER, United States Magistrate Judge.

Plaintiff, Arlene Watkins, brings this action as administratrix of James Watkins'

estate against his former employer, C. Earl Brown, Inc., and David Lent, its general manager, for alleged violations of Maryland Wage Payment and Collection Law and for breach of contract.[1] Plaintiff claims that defendants unlawfully withheld commissions owed to Mr. Watkins. (Paper No. 9, Counts I & II).

The case was referred to the undersigned for all proceedings with the consent of the parties. 28 U.S.C. § 636(c); Local Rule 301.4. Pending before the court is Defendant Lent's Motion for Summary Judgment (Paper No. 20) and Plaintiff's Opposition (Paper No. 21).[2] No hearing is deemed necessary. Local Rule 105.6. For the reasons set forth below, the court grants Defendant Lent's Motion for Summary Judgment.

### I. *Factual Background*[3]

For purposes of the pending motion, the parties do not dispute the following facts. Defendant C. Earl Brown, Inc. engages in the sale, leasing and servicing of commercial vehicles and accessories. (Paper No. 20 at 1). From August 18, 1998 through July 1, 2000, James Watkins was a salesman for C. Earl Brown, Inc. at its Hagers-

town, Maryland sales facility. (Paper No. 21 at 1).

Defendant David Lent has been general manager of C. Earl Brown, Inc. at all times relevant to this case, up to and including the present. (Paper No. 20 at 1). He is paid a salary plus "a commission based on the net profit of the corporation." (Paper No. 21, Ex. 3 at 41). In addition, Mr. Lent was the company's sole corporate representative designated to testify on behalf of the company in this matter. (Paper No. 21 at 2).

As general manager,[4] Mr. Lent sets the salary/draw and rate of commission for the sales people and has final approval on hiring and firing employees. (Paper No. 21 at 2). He reviews sales invoices and assigns a value to trade-in vehicles as well as determining the amount of profit to be made on a sale. (*Id.*). Mr. Lent sets the procedures salesmen must follow in order to receive their commissions and can authorize that an employee be paid despite being off from work. (*Id.* at 3).

On June 29, 2000 Mr. Lent sent Mr. Watkins a letter terminating his employment. (Paper No. 21, Ex. 1). Mr. Watkins then wrote to Mr. Lent requesting

---

1. This suit was originally filed by James Watkins. (Paper No. 1). After James Watkins' death, Arlene Watkins, administratrix of his estate, was substituted as plaintiff. (Paper No. 8).

2. By letter dated October 3, 2001, the court invited the parties to submit additional materials relevant to the pending motion for summary judgment. In particular, the court noted that defendant had not filed a reply and that plaintiff's opposition did not address the breach of contract claim. Neither party submitted any additional materials.

3. Both parties submitted brief statements of fact. Neither party specified any disputed facts material to resolution of the motion for summary judgment with respect to either the MWPCL or the breach of contract claim. The factual background which follows is taken in

large part from the brief submitted by the non-moving party, plaintiff.

4. At his deposition, Mr. Lent described his job responsibilities as follows: "I work for the owner/president of the company, John Brown. I carry out his instructions to the best of my ability. I am responsible for the overall operation of the company, the systems, making sure we have proper insurance, trying to operate at a profit, trying to find good employees. Even though I do not do all of the hiring myself, I still do some hiring. I try to protect the company. I sometimes get into the daily operations of the company, depending on what the situation is. I try to let other people do that." (Paper No. 21, Ex. 3 at 44).

payment of commissions earned prior to his termination. (Paper No. 21, Ex. 2). Since that time, Mr. Watkins and his estate have not received any of the commissions claimed by Mr. Watkins.

## II. *Summary Judgment Standard*

Summary judgment is appropriate when there is no genuine issue of material fact and a decision may be rendered as a matter of law. Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment has the burden to demonstrate the absence of any genuine issue of material fact. Fed.R.Civ.P. 56(c); *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir.1987).

If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. The only facts that are properly considered "material" are those that might affect the outcome of the case under the governing law. *Id.* at 248, 106 S.Ct. 2505. If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–250, 106 S.Ct. 2505. Thus, the existence of only a "scintilla of evidence," is not enough to defeat a motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505.

To determine whether a genuine issue of material fact exists, all facts and all reasonable inferences drawn therefrom are construed in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-

moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

On those issues for which the non-moving party will have the burden of proof, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other evidence specified in the rule. *Id.*; Fed.R.Civ.P. 56(e); *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof in her claim at trial."). If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

## III. *Discussion*

### A. *Maryland Wage Payment and Collection Law Claim*

Count I of plaintiff's Complaint alleges that defendants, C. Earl Brown, Inc. ("the Company") and David Lent, violated the Maryland Wage Payment and Collection Law ("MWPCL"), Md.Code Ann., Lab. & Empl. § 3–501 *et seq.* (1999 Repl.Vol.), by failing to pay Mr. Watkins commissions he earned during his employment. (Paper No. 9, Count I). Specifically, the MWPCL requires employers to pay accrued wages[5] to an employee upon termination of employment, § 3–505, and provides a private

---

**5.** The term "wages" is defined by the MWPCL to include commissions, the renumeration

specifically sought by plaintiff. § 3–501(c)(2)(ii).

cause of action against an employer who violates the statute. § 3–507.1(a).[6]

The parties do not dispute the material facts regarding Mr. Lent's position as general manager or his job responsibilities. They do disagree, however, as to the legal effect of those facts. Plaintiff seeks to hold Mr. Lent liable for violation of the MWPCL for nonpayment of commissions the Company owed to Mr. Watkins based on the theory that, by virtue of his job responsibilities as general manager, Mr. Lent was Mr. Watkins' "employer" within the meaning of the statute. Mr. Lent argues that his supervisory position as an employee at the Company does not make him an "employer." The parties agree that Mr. Lent can only be held liable if he is considered an "employer" under the MWPCL.

The MWPCL defines the term "employer" as "any person who employs an individual in the State or a successor of the person." § 3–501(b). Section 3–101, the general definition section for Title 3 (Employment Standards and Conditions) of the Labor and Employment Article (hereinafter "Title 3"), defines "employ" as "to engage an individual to work ... [including] (i) allowing an individual to work; and (ii) instructing an individual to be present at a work site." § 3–101(c). Plaintiff contends that Mr. Lent is an "employer" under the MWPCL because he engaged Mr. Watkins to work within the meaning of § 3–101(c) by "direct[ing] Mr. Watkins' actions and, most importantly, decid[ing] what compensation Mr. Watkins was to be paid." (Paper 21 at 3).

Neither party has directed the court's attention to any case law on point, and the court's own research has not revealed any cases interpreting the relevant definitions. Accordingly, the court must apply principles of statutory interpretation to ascertain the meaning of the term "employer" as defined in the MWPCL. Specifically, the question before the court is whether the statutory definition of "employer," as a matter of law, can include an individual like Mr. Lent, with supervisory job responsibilities as described above, such that Mr. Lent may be personally liable to plaintiff for wages owed to Mr. Watkins. For the reasons outlined below, the court finds that, as a matter of law, Mr. Lent does not fall within the definition of "employer." Accordingly, Defendant Lent is entitled to summary judgment on Count I of the Complaint.

### 1. *Statutory Interpretation*

█ It is well-settled that the starting point for statutory interpretation is to examine the plain meaning of the words of the statute. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980); *see also Chesapeake & Potomac Telephone Co. of Md. v. Director of Finance for Mayor & City Council of Baltimore*, 343 Md. 567, 578, 683 A.2d 512, 517 (1996) (the inquiry into plain meaning ends "when the words of the statute are clear and unambiguous, according to their commonly understood meaning"). When applying the plain meaning rule, the court must consider the context surrounding the

---

**6.** Section 3–507.1(a) provides a private cause of action for violation of either § 3–502 or § 3–505. Because the factual allegations in plaintiff's Complaint refer to wages accrued before his termination, the court understands this to mean plaintiff alleges a violation of § 3–505, and not § 3–502, which regulates the frequency of pay periods and form of payment. Section 3–505 requires that "[e]ach employer pay an employee or authorized representative of an employee all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." § 3–505.

statute, including related statutes, legislative history and other evidence bearing on legislative purpose. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."); *see also Kaczorowski v. Mayor & City Council of Baltimore*, 309 Md. 505, 514, 525 A.2d 628, 632 (1987) ("[T]he 'meaning of the plainest language' is controlled by the context in which it appears.").[7]

■ In the context of the pending motion, the court must examine the plain meaning of the term "employer" to determine whether it would be possible for a factfinder to conclude that Mr. Lent was an "employer" under the MWPCL. As discussed in detail below, the court finds that neither the plain language of the statute nor the clear legislative intent supports such a conclusion. As the Court of Appeals explained, "[w]here the language is clear and unambiguous, a court may not add or delete words to make a statute reflect an intent not evidenced in that language." *Condon v. State*, 332 Md. 481, 491, 632 A.2d 753, 758 (1993). Here, interpreting the term "employer" as plaintiff suggests, would mean adding language to the statute so as to reflect an intent clearly not contemplated by the statute.

■ As noted above, the statutory definition of "employer" is "any person who employs an individual;" "employ" means to "engage to work." There is no indication

in the statute that these definitions are any different from the commonly understood meaning of the term "employer," which contemplates some sort of contractual relationship involving the payment of wages in exchange for services. *See Oxford English Dictionary* (2d ed.1989) (defining "employer" as "[o]ne who employs servants, workmen, etc. for wages"); *Webster's New World Dictionary* (3d College ed.1988) (defining "employer" as "one who employs; esp., a person, business firm, etc. that hires one or more persons to work for wages or salary"). The notion that a supervisor of an employee (who himself is paid a wage by the employer) is somehow responsible for the payment of wages to another employee whom he supervises is inconsistent with the plain language of the statute.

■ In addition to the clear language of the statute, the general purpose of the MWPCL does not support plaintiff's argument. Though the MWPCL does not contain a purpose section, the introduction to the session law describes the statute as *"[r]elating generally* to wage payment and collection, imposing requirements as to the regularity, frequency and medium of wage payments and permissible deductions therefrom; providing for penalties, and conferring enforcement duties and powers on the Commissioner of the Department of Labor and Industry." 1966 Md.Laws ch. 686 (emphasis added). The Court of Appeals similarly described the statutory purpose: "its principal purpose was to provide a vehicle for employees to collect, and

---

7. In addition, the Maryland Court of Appeals has noted that: "[w]hen we pursue the context of statutory language, we are not limited to the words of the statute as they are printed in the Annotated Code. We may and often must consider other 'external manifestations' or 'persuasive evidence,' including a bill's title and function paragraphs, amendments that

occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case." *Kaczorowski*, 309 Md. at 514–15, 525 A.2d at 632–33.

an incentive for employers to pay, back wages." *Battaglia v. Clinical Perfusionists, Inc.,* 338 Md. 352, 364, 658 A.2d 680, 686 (1995). Accordingly, plaintiff's contention that "employer" should be interpreted broadly because of the remedial nature of the MWPCL is contrary to the statute's general purpose, which is merely to regulate and ensure wage payments by employers.

It is also important to note that the term "employer" is defined differently in other statutory sections regarding wages and hours. *See, e.g.,* "3–301 (Equal Pay for Equal Work Law)," "3–401 (Wage and Hour Law), 3–501 (Wage Payment and Collection Law)." In "3–301 and 3–401," neither of which is at issue in this case, the legislature expressly included within the definition of "employer" "a person who acts directly or indirectly in the interest of another employer with an employee." " '3–301(b)(2), 3–401(c). In the court's view, the fact that the Maryland General Assembly, in these other sections, has specifically added this language but chose not to in the MWPCL is strong evidence that the legislature did not intend to broaden the meaning of 'employer' in 3–501' " *See, e.g., Mayor & City Council of Baltimore v. Chase,* 360 Md. 121, 126–27, 756 A.2d 987,

990 (2000) ("The statute is rendered even clearer when it is recalled that the Legislature knows how to differentiate between voluntary fire companies and municipal fire companies and has done so clearly whenever that is what it intended.").

As noted above, the court has not been directed to, nor has its own research revealed, any cases [8] that have interpreted the definition of "employer" in the MWPCL.[9] When the Maryland Court of Appeals has interpreted the MWPCL, however, that court has not attributed to the act a legislative intent to provide a remedy greater than what is available at common law. *See Battaglia,* 338 Md. at 362, 658 A.2d at 685; [10] *see also Baltimore Harbor Charters, Ltd. v. Ayd,* 365 Md. 366, 780 A.2d 303 (2001) (in interpreting the term "employee" in the MWPCL, a term not defined in the statute, the Court of Appeals used common law principles of respondeat superior and agency to interpret its meaning). In sum, applying many of the same principles of statutory interpretation employed by the courts noted above, this court cannot adopt the broad definition of "employer" advanced by plaintiff. The plain language, general purpose and clear intent of the MWPCL do not support an interpretation of the word

---

**8.** The only case the court located which remotely touches on this issue is *Magee v. Dan-Sources Technical Services, Inc.,* 137 Md.App. 527, 769 A.2d 231 (2001). Interestingly, in a footnote in *Magee,* the Maryland Court of Special Appeals explained that plaintiff had originally brought suit against the company's president and controlling shareholder for violations of the MWPCL, but abandoned the claim because he was not plaintiff's "employer" within the meaning of the statute. *Id.* at 534 n. 2, 769 A.2d at 235 n. 2.

**9.** Since 1966, the statute has been amended on several occasions, but has never been amended to reflect an intent to broaden the scope of the statute as suggested by plaintiff. *See, e.g.,* 1974 Md.Laws ch. 142; 1991 Md.

Laws ch. 8; 1993 Md.Laws ch. 578. On the contrary, the legislature made clear that it did not intend for 1991 amendments to the MWPCL to change the meaning of "employer" in any substantive way. 1991 Md.Laws ch. 8, Revisor's Note ("This subsection is new language derived without substantive change from former Art. 100, " 94(a)(1).").

**10.** The issue in *Battaglia* was the effect of the MWPCL on common law remedies for breach of an employment contract. *Battaglia,* 338 Md. at 358–61, 658 A.2d at 683–85. There, the court reviewed the general purpose of the statute and determined that the MWPCL did not provide plaintiff with a remedy in addition to those available at common law. *Id.* at 362, 658 A.2d at 685.

"employer" that would include a mere supervisor of another employee.

## 2. *The Fair Labor Standards Act Comparison*

■ Plaintiff argues that the MWPCL was intended to "mimic" the federal Fair Labor Standards Act ("FLSA") and should be interpreted similarly by this court. A comparison of the purposes and definitions of the FLSA and MWPCL, however, reveals that the MWPCL was not intended to be the Maryland equivalent of the FLSA. Consequently, the expansive FLSA definition of the term "employer" advanced by plaintiff cannot be substituted for the more restrictive definition set forth in the MWPCL.

A review of the pertinent statutes reveals that the Maryland Wage and Hour Law, Md.Code Ann., Lab. & Empl. " 3–401 *et seq.* (1999 Repl.Vol.), not the MWPCL, is the state's equivalent of the FLSA. Both the Maryland Wage and Hour Law and the FLSA have similar purposes, to provide a minimum wage and maximum hours for employees. *Compare* "3–402 (statement of legislative findings and purpose)," *with* 29 U.S.C. "202 (congressional findings and declaration of policy). Indeed, the definition of employer in " 3–401 is almost identical to the FLSA's definition. *Compare* "3–401(c), *with* 29 U.S.C. 203(d)." In addition, the Maryland Wage and Hour Law contains several internal references to the FLSA. *See, e.g.,* "3–401 (definitions), 3–404 (effect of the subtitle on employee rights under the FLSA), 3–413" (minimum wage requirement). The MWPCL, on the other hand, provides requirements for, *inter alia,* pay periods, form of payment, permissible deductions, and payment of wages upon termination (at issue here). 3–502, 3–503, 3–505."

Perhaps most notably, however, the definitions of the term "employer" set forth in the MWPCL and the FLSA are different and, therefore, do not support plaintiff's argument that they should be interpreted similarly. Specifically, the FLSA explicitly includes within the meaning of employer, "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. " 203(d).[11] As discussed above, the MWPCL does not contain a similar provision that explicitly expands employer liability to those acting on behalf of the employer. It merely defines employer as "any person who employs an individual." " 3–501(b).

In conclusion, plaintiff's interpretation of the term "employer" is not borne out by the MWPCL itself, or any of the definitional sections. To adopt plaintiff's position, the court would have to ignore the plain language of the statute and read into the statute an interpretation not supported by available evidence of legislative intent. Such a conclusion would be contrary to traditional rules of statutory construction. Therefore, the fact that Mr. Lent has the managerial authority undisputed by the parties, is insufficient, as a matter of law, to make him an "employer" within the meaning of the MWPCL. Accordingly, Mr. Lent is entitled to summary judgment on Count I of the Complaint.

## B. *Breach of Contract Claim*

Count II of plaintiff's Complaint alleges defendants Lent and C. Earl Brown, Inc.

---

11. Courts applying the FLSA definition have relied on the "indirectly" language in this definition of "employer." *See, e.g., Brock v. VAFLA Corp.,* 668 F.Supp. 1516, 1520 (M.D.Fla.1987) (holding a general manager liable as an employer under the FLSA because he acted directly or indirectly on behalf of the employer); *Marshall v. Gerwill, Inc.,* 495 F.Supp. 744, 755 (D.Md.1980) (president and part owner acted indirectly in the interest of employer-corporation in relation to employees by controlling actions of management employees).

breached their contract with Mr. Watkins by failing to pay him the commissions he was due under a contract between Mr. Watkins and defendants when he was terminated. (Paper No. 9, Count II). For the reasons stated below, Mr. Lent's Motion for Summary Judgment is granted with respect to Count II of the Complaint.

 In order to recover on a breach of contract theory, plaintiff has the burden of showing, *inter alia*, that a contract existed between Mr. Lent and Mr. Watkins. Plaintiff alleges in her complaint that "Decedent James Watkins and Defendants entered into a contract ." (Paper No. 9, Count II ¶ 13). In support of his Motion for Summary Judgment, Mr. Lent attached an affidavit in which he stated that "I at no time entered into an employment contract with James Watkins for him to work for me as an individual." (Paper No. 20, Ex. 2).

Where, as here, the nonmoving party would have the burden of proof at trial, that party must use proof, such as affidavits and deposition testimony, to identify specific facts constituting a genuine issue of fact. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Reliance on allegations in plaintiff's Complaint are insufficient to overcome summary judgment. Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."); *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505.

In this case, however, plaintiff did not satisfy her duty to establish a genuine issue of material fact. Plaintiff's opposition did not address the breach of contract claim, let alone direct the court to any

evidence on the issue. (Paper No. 21). Even after the court specifically requested additional briefing on the breach of contract claim in its letter of October 3, 2001, plaintiff did not respond. Therefore, there is no evidence before the court showing that there is a genuine dispute as to whether a contract existed between Mr. Lent and Mr. Watkins. Pursuant to Federal Rule of Civil Procedure 56(e), where the adverse party does not respond, as here, summary judgment is appropriate. Accordingly, Mr. Lent is entitled to summary judgment on Count II of the Complaint.

### IV. Conclusion

For the foregoing reasons, Defendant David Lent's Motion for Summary Judgment is granted as to Counts I and II of the Complaint. A separate order shall issue.