56 A.3d 303

**Roberto CAMPUSANO, et al.**

v.

**LUSITANO CONSTRUCTION LLC, et al.**

**No. 1529, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Nov. 21, 2012.

---

**32**

Richard S. Ugelow, Washington College of Law, American University Law School, Washington, DC, for appellant.

No briefs submitted. Argument did not happen on behalf of the appellee.

Panel: KRAUSER, C.J., WRIGHT, and MATRICCIANI, JJ.

MATRICCIANI, J.

On February 10, 2010, appellants, Roberto Campusano, Justo Portocarrero, Ivan Mello, and David Rosales, brought suit against appellees, Lusitano Construction, LLC, Geoffrey de Oliveira ("Geoffrey"), and Francisco de Oliveira ("Francisco"), in the Circuit Court for Montgomery County. Appellants alleged violations of §§ 206 and 207 of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, as well as §§ 3-502 and 3-505 of the Maryland Wage Payment and Collection Law ("Payment and Collection Law"), Md.Code (1991, 2008 Repl.Vol., 2010 Suppl.), §§ 3-501 *et seq.* of the Labor and Employment Article ("LE"). On November 1, 2010, the trial court entered judgment against Geoffrey and Lusitano Construction for treble damages of $57,400.00. The court's judgment did not address appellants' claims for attorney's fees and costs or their claims against Francisco. On November 10, 2010, appellants moved to amend the judgment to award attorney's fees and costs and to enter judgment in favor of Francisco for purposes of appeal. The court denied appellants' motion on September 8, 2011, and this timely appeal followed on September 15, 2011.

QUESTIONS PRESENTED

Appellants present two questions, which we quote:

I.    Is Francisco de Oliveira an employer within the meaning of the Fair Labor Standards Act and the Maryland Wage and Payment Collection Law?

II.   Did the Circuit Court err by denying the Plaintiffs as prevailing parties an award of their reasonable attorney's fees and costs?

For the reasons that follow, we answer no to the first question, but we answer yes to the second question and remand for further proceedings in the Circuit Court for Montgomery County.

FACTUAL AND PROCEDURAL HISTORY

Geoffrey de Oliveira was the sole owner of Lusitano Construction, LLC, which in 2007 and 2008 was under contract to complete two interior renovation projects: the Oro Pomodoro Restaurant in Rockville, MD, and the Valley Terrace Apartments in Baltimore, MD. Appellants worked on both projects at various times as construction laborers.

Geoffrey supervised the Oro Pomodoro project while Geoffrey's father, Francisco de Oliveira, supervised the Valley Terrace project. In that capacity, Francisco set appellants' work schedule, assigned their tasks, managed supplies, maintained work logs, and "occasionally" distributed paychecks drafted by Geoffrey or Lusitano Construction.

Francisco testified that he did not hire appellants or set their wages. Portocarrero and Mallo corroborated Francisco's testimony. Rosales testified that he merely "communicated" with Francisco about employment and salary. Campusano testified that Geoffrey hired him and that he "thinks" Francisco may have had some influence on his wages because Francisco was his supervisor.

At some point in 2007, Geoffrey stopped issuing payment to appellants. Francisco told the workers that Geoffrey would

pay them with money from other projects once those projects finished.[1]

Francisco testified that he purchased supplies for the Valley Terrace project with personal funds, and the evidence showed that Geoffrey had an unspecified $50,000.00 line of credit with his father discharged in bankruptcy in 2009.[2] Campusano testified that Francisco paid some of his wages from personal funds, but Francisco denied this.[3]

On February 10, 2010, appellants brought suit against appellees for violations of FLSA §§ 206–207, as well as §§ 502 and 505 of the Payment and Collection Law. Appellants sought unpaid wages and overtime under FLSA § 216(b)[4] and

---

1. Appellants corroborated this testimony, if vaguely. Portocarrero testified: "I spoke to Francisco and [ ] he told me that there were some apartments that needed to be finished and once we would finish them they were going to pay [us]." Rosales testified: "I did ask Mr. Francisco if I was going to be paid and he said that yes, there were going to pay it." Mallo testified that Francisco told him "not to worry about it and that we were going to try to fix the situation and to continue working," and that "they were going to take care of it." Finally, Campusano testified that "Francisco and Geoffrey would promise us that when they would get money they were going to pay us."

2. The record contains a portion of Geoffrey's bankruptcy filing which discloses a "Guaranteed Credit Line" and lists Francisco as the creditor. It appears that Francisco may have been only a guarantor of this loan, and ambiguous stipulations from both sides at trial did not resolve the matter:

   [DEFENDANTS' COUNSEL]: Your Honor, I'll stipulate that Francisco Deoliveria [sic] was also a debtor who was, whose and Geoffrey's financial obligations were discharged in the January 10th [bankruptcy] order.

   [PLAINTIFFS' COUNSEL]: Specifically, Your Honor, there was a $50,000 debt from Geoffrey to his father.

   THE COURT: All right.

   Without appellees' counsel to shed light on the situation, and because the face of the bankruptcy documents list Francisco as a "creditor," we will assume appellants' contention that Francisco was Geoffrey's creditor, for purposes of this appeal.

3. According to Campusano, Francisco "took that money out of his money and when he came to pay us he said it was my money, my money, not Geoffrey's."

4. FLSA § 216(b) provides, in relevant part:

Payment and Collection Law § 507.2, which provides:

(a) *In general.*—Notwithstanding any remedy available under § 3–507 of this subtitle, if an employer fails to pay an employee in accordance with § 3–502 or § 3–505 of this subtitle, after 2 weeks have elapsed from the date on which the employer is required to have paid the wages, the employee may bring an action against the employer to recover the unpaid wages.

Appellants also sought attorney's fees and costs under FLSA § 216(b) and Payment and Collection Law § 507(b)(1).

At the conclusion of a one-day trial on October 27, 2010, the trial court found Geoffrey liable under the FLSA and the Payment and Collection Law, and found that Francisco was not an "employer" under either law. Accordingly, the court entered judgment against Geoffrey and Lusitano Construction for treble damages of $57,400.00 on November 1, 2010. The judgment did not address appellants' claims for attorney's fees or their claims against Francisco. On November 10, 2010, appellants moved to amend the judgment to award attorney's fees and costs and to enter judgment *in favor* of Francisco. The court denied appellants' motion on September 8, 2011, and this timely appeal followed on September 15, 2011.

---

Any employer who violates the provisions of section 6 or section 7 of this Act [29 USCS § 206 or 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 15(a)(3) of this Act [29 USCS § 215(a)(3)] shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 15(a)(3) [29 USCS § 215(a)(3)], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated....

An action under FLSA § 216(b) is cognizable under Maryland Law as an action to enforce a statutory obligation. *See Bright v. Hobbs,* 56 F.Supp. 723 (D.Md.1944).

DISCUSSION

I.

Appellants argue that Francisco was an "employer" under the FLSA and the Payment and Collection Law according to the four-factor "economic reality" test of "control" developed by federal courts for the FLSA and applied in *Newell v. Runnels*, 407 Md. 578, 649–54, 967 A.2d 729 (2009), to the Maryland Wage and Hour Law ("Wage and Hour Law"), Md.Code (1991, 2008 Repl.Vol., 2010 Suppl.), §§ 3–401 et seq. Their argument challenges both factual findings, which we review for clear error, and conclusions of law, which we review *de novo. Blackwell v. Wyeth*, 408 Md. 575, 611–12, 971 A.2d 235 (2009). For the following reasons, we decide—as a matter of first impression—that the test also applies to the Payment and Collection Law.

The U.S. Court of Appeals for the Third Circuit succinctly summarized the history of the general "economic reality" test in *Haybarger v. Lawrence County Adult Prob. & Parole*, 667 F.3d 408, 418 n. 8 (3d Cir.Pa.2012):

> The "economic reality" test is a broad test for determining whether an employment relationship exists, and is not limited to evaluating whether a supervisor is an employer for purposes of individual liability. In 1944, the Supreme Court first looked to the "underlying economic facts" to distinguish between employees and independent contractors under the National Labor Relations Act. *N.L.R.B. v. Hearst Publ'ns, Inc.*, 322 U.S. 111, 129, 64 S.Ct. 851, 88 L.Ed. 1170 (1944) (citing *N.L.R.B. v. Blount*, 131 F.2d 585 (8th Cir. 1942)). Seventeen years later, the Supreme Court looked to the "economic reality" of the employment relationship to hold that members of a work cooperative qualified as employees under the FLSA. *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961) (quoting *United States v. Silk*, 331 U.S. 704, 713, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947)) (additional citation omitted). Since then, we and other circuits have applied the economic reality test to decide whether entities qualify as

employers under the FLSA. *See, e.g., Hodgson* [*v. Arnheim & Neely, Inc.*, 444 F.2d 609, 612 (3d Cir.Pa.1971) ]; *Baystate Alt. Staffing v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998); *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir.1983).

The general "economic reality" test is now nearly ubiquitous in the federal courts of appeal. *See, e.g., Herman v. RSR Sec. Servs.*, 172 F.3d 132, 140 (2d Cir.N.Y.1999); *Haybarger v. Lawrence County Adult Prob. & Parole*, 667 F.3d 408, 417–18 (3d Cir.Pa.2012); *Brennan v. Gilles & Cotting, Inc.*, 504 F.2d 1255, 1262 (4th Cir.1974); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971–72 (5th Cir.Tex.1984); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965–66 (6th Cir.Mich.1991); *Karr v. Strong Detective Agency, Inc., Div. of Kane Services*, 787 F.2d 1205, 1207 (7th Cir.Wis.1986); *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir.Mo.2005); *Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir.Fla.1986).

Our Court of Appeals has not applied the economic reality test to the Payment and Collection law, but it has applied the test to the Wage and Hour Law because the latter is the State parallel of the FLSA. *Newell*, 407 Md. at 649, 967 A.2d 729. Appellants assume that the test should be applied in their case, but as the U.S. District Court for the District of Maryland rightly noted in *Watkins v. C. Earl Brown, Inc.*, 173 F.Supp.2d 409, 416 (D.Md.2001), the Maryland Wage and Hour Law, *not* the Payment and Collection Law, is the state's equivalent of the FLSA. First, the Wage and Hour Law defines "employer" identically to the FLSA. *Compare* 29 USCS § 203(d) (" 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee ...") to MWHL § 3–401(b) (" 'Employer' includes a person who acts directly or indirectly in the interest of another employer with an employee."). Second, the FLSA governs primarily minimum wages and maximum hours, whereas the Payment and Collection Law sets *specific terms* for payment mandated elsewhere in the Wage and Hour Law.

■ Despite its differences from the Wage and Hour Law, the Payment and Collection Law is sufficiently similar for the economic reality test to apply. Payment and Collection Law § 501(b) defines an employer to include "any person who employs an individual in the State or a successor of the person." The word "employ" is defined broadly by LE § 3–101(c) as "to engage an individual to work," and the term includes "(i) allowing an individual to work; and (ii) instructing an individual to be present at a work site." Because of this expansive definition and the Payment and Collection Law's remedial purposes, *see Friolo v. Frankel,* 373 Md. 501, 517–18, 819 A.2d 354 (2003); *Stevenson v. Branch Banking & Trust Corp.,* 159 Md.App. 620, 644, 861 A.2d 735 (2004), the reasoning in *Newell* leads us to conclude that the economic reality test governs the definition of "employer" in Payment and Collection Law § 501(b).[5]

■ There is, however, more than one incarnation of the

---

5. We thus disagree with the U.S. District Court's holding in *Watkins* that "the expansive FLSA definition of the term 'employer' advanced by plaintiff cannot be substituted for the more restrictive definition set forth in the [Payment and Collection Law]." 173 F.Supp.2d at 416. The U.S. District Court cited *Battaglia v. Clinical Perfusionists,* 338 Md. 352, 658 A.2d 680 (1995) and *Baltimore Harbor Charters, Ltd. v. Ayd,* 365 Md. 366, 780 A.2d 303 (2001), for its supporting premise that, "[w]hen the Maryland Court of Appeals has interpreted the [Payment and Collection Law], however, that court has not attributed to the act a legislative intent to provide a remedy greater than what is available at common law." 173 F.Supp.2d at 415. But *Battaglia* and *Ayd* dealt with specific provisions of the Payment and Collection Law that did not alter the common law with new definitions or rules of law. *Ayd,* 365 Md. at 392, 780 A.2d 303 (the difference between an "employee" under the Payment and Collection Law and an "independent contractor" is informed by the doctrine of *respondeat superior,* principles enumerated in Restatement (Second) of Agency, and case law interpreting wage act statutes of other jurisdictions); *Battaglia,* 338 Md. at 362, 658 A.2d 680 (Payment and Collection Law §§ 501(c), 502, 505, and 507.1 do not alter the common law of contract and unjust enrichment).

We, however, are not bound to define "employer" according to the common law because the broad definition of "employ" in LE § 3–101 (as incorporated by Payment and Collection Law § 501(b)), evinces the legislature's intent to expand the common law definition of "employer," just as it did with the MWHL. *See Newell,* 407 Md. at 649–50, 967 A.2d 729.

"economic reality" test.[6]  *Newell,* 407 Md. at 651, 967 A.2d 729 (citing *Barfield v. N.Y. City Health & Hosps. Corp.,* 537 F.3d 132, 142 (2d Cir.2008)). As we explain below, there is insufficient evidence that Francisco personally benefitted from appellants' labor, and so we are only concerned with the four-factor economic reality test for "control" that the Court of Appeals (coincidentally) applied in *Newell,* 407 Md. at 653, 653 n. 39, 967 A.2d 729. *See also Harker v. State Use Indus.,* 990 F.2d 131, 133 (4th Cir.Md.1993) (holding that "a true employer-employee relationship" involves a " 'bargained-for exchange of labor' for mutual economic gain" (citing *Vanskike v. Peters,* 974 F.2d 806, 809 (7th Cir.1992); *Gilbreath v. Cutter Biological, Inc.,* 931 F.2d 1320, 1325 (9th Cir.1991))).[7]  The economic reality test for "control" examines "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of

---

**6.** The *Barfield* Court set out the primary "species" of economic reality tests:

> [T]he various factors relied upon by this court (1) to examine the degree of formal control exercised over a worker; (2) to distinguish between independent contractors and employees; and (3) to assess whether an entity that lacked formal control nevertheless exercised functional control over a worker, state no rigid rule for the identification of an FLSA employer. To the contrary, ... they provide a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA....

537 F.3d at 143 (citations and internal quotation marks omitted); *see also id.* at 142–43, 967 A.2d 729 (describing the different factors for each test).

**7.** The present case is thus distinguished from the more prevalent "joint employment" case, wherein the employee "performs work which simultaneously benefits two or more employers" and "one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee," 29 C.F.R. § 791.2(b). *See Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468, 471 (11th Cir.Fla.1982); *Ansoumana v. Gristede's Operating Corp.,* 255 F.Supp.2d 184, 188–89 (S.D.N.Y.2003) ("The ... 'economic reality' test ... takes into account the real economic relationship between the employer who uses and benefits from the services of workers and the party that hires or assigns the workers to that employer.").

payment, and (4) maintained employment records." *Id.* at 651, 967 A.2d 729 (quoting *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir.2008)).

■ The four enunciated factors of "control" are not to be applied mechanistically, and their general purpose must be understood as ultimately assigning *responsibility* under the law. The U.S. Court of Appeals for the Second Circuit has explained that the four-factor analysis of control focuses "on the role played by the corporate officers in *causing* the corporation to undercompensate employees and to prefer the payment of other obligations and/or the retention of profits." *Baystate Alternative Staffing v. Herman*, 163 F.3d 668, 678 (1st Cir.Mass.1998) (emphasis added). "In addition to direct evidence of such a role, other relevant indicia may exist as well—for example, an individual's operational control over significant aspects of the business and an individual's owner-ship interest in the business.... Such indicia, while not dispositive, are important to the analysis because they suggest that an individual controls a corporation's financial affairs and can cause the corporation to compensate (or not to compen-sate) employees in accordance with the FLSA." *Id.* (citing *Donovan v. Agnew*, 712 F.2d 1509, 1511–14 (1st Cir.Mass. 1983)). "[I]t is the totality of the circumstances, and not any one factor, which determines whether a worker is the employ-ee of a particular alleged employer." *Baystate*, 163 F.3d at 676.

■ The legislative intent to incentivize payment by respon-sible parties would not be served by holding that a supervisor such as Francisco was an "employer" under either the FLSA or the Payment and Collection Law. Although Francisco su-pervised and controlled appellants' work schedules and condi-tions of employment, and although he maintained their work logs, these supervisory tasks are not sufficient to make him personally liable for appellants' wages, particularly where he had no ownership, control, or investment in the LLC that was appellants' formal employer. First, the trial court found that Geoffrey, not Francisco, had the power to hire and fire

employees and to determine their rate and method of payment. There is scant evidence to the contrary, and certainly not enough to reverse the trial court's factual finding as clearly erroneous. Second, there was no evidence that Geoffrey's $50,000.00 line of credit with Francisco was given—or even related—to Lusitano Construction. Third, the trial court was free to credit Francisco's testimony that he never paid wages personally, rather than Campusano's uncorroborated testimony that Francisco stressed (for no apparent reason) that he was paying appellants' wages from his own pocket. Fourth, Francisco merely distributed appellants' paychecks, all of which indisputably originated from Geoffrey. Fifth, Francisco admitted to purchasing some supplies to help advance the construction project, but mere payment of minor, reimbursable expenses does not even approach an "investment" in a firm such that one should be considered responsible for employee wages. Finally, while appellants claim that Francisco "induced" them to work without pay, Francisco merely stated an apparent—if contingent—fact: if Geoffrey received funds from other projects, then he would pay appellants. Nothing in the record indicates that Francisco personally guaranteed appellants' pay or intended to give them false hope of payment.

Taking these facts as a whole, we hold that Francisco was not an "employer" within the meaning of either FLSA or the Payment and Collection Law. Were we to hold otherwise, we would set the precedent that any manager who has some direction in hiring, wages, and other conditions of employment is *personally liable* for wages that the manager's own employer is unable or unwilling to pay. Simply stated, managers with no equity interest in the fruits of employee labor should not have to act as insurers of last resort, either to their employers or to the employees that they supervise. Because the trial court failed to do so, we hereby enter final judgment under Maryland Rule 8–604(e) in favor of Francisco as to all claims.

## II.

Appellants next argue that the trial court erred when it failed to award reasonable attorney's fees and costs under FLSA § 216(b) and Payment and Collection Law § 507.2. Attorney's fees and costs must be awarded under FLSA § 216(b), but the "award" may be zero in certain circumstances. *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1245-46 (11th Cir.Fla.2009) (FLSA fees denied where counsel's "conscious disregard for lawyer-to-lawyer collegiality and civility caused (among other things) the judiciary to waste significant time and resources on unnecessary litigation and stood in stark contrast to the behavior expected of an officer of the court"). The Payment and Collection Law, however, leaves the matter of attorney's fees and costs to the judge's discretion. LE § 3-507.2(b). "[S]uch discretion, consistent with the intent of the General Assembly, is 'to be exercised liberally in favor of awarding fees, at least in appropriate cases.'" *Friolo v. Frankel*, 403 Md. 443, 456-57, 942 A.2d 1242 (2008) (citing *Friolo v. Frankel*, 373 Md. 501, 516, 819 A.2d 354 (2003)). The trial court failed to consider appellants' requests for fees and costs under the Payment and Collection Law, and our review of the record reveals no indication whether the trial court was inclined to grant or deny the request. We note that the Court of Appeals held in *Henriquez v. Henriquez*, 413 Md. 287, 992 A.2d 446 (2010), that fees may be awarded to a *pro bono* organization under the more stringent attorney's fee provision of Maryland Code (1984, 2006 Repl.Vol.), § 12-103. While the circumstances here may dictate a different result, we must remand only appellants' request for attorney's fees to the trial court for consideration.

**JUDGMENT HEREBY ENTERED IN FAVOR OF APPELLEE FRANCISCO DE OLIVEIRA AS TO ALL CLAIMS. CASE REMANDED IN PART TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. REMAINING JUDGMENTS AFFIRMED. COSTS TO BE PAID 50% BY APPELLANTS AND 50% BY LUSI-**

TANO CONSTRUCTION LLC AND GEOFFREY DE OLI-VEIRA.